IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 04-cv-02148-LTB

THERESA FLORES,

       Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

       Defendant.
_____

ORDER
_____

       Plaintiff, Theresa Flores, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits and supplemental security income, filed pursuant to 42 U.S.C. §§ 401-433 and 42 U.S.C. §§ 1381-1383. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this motion. After consideration of the motion and all related pleadings, as well as the administrative record, for the reasons set forth below I REVERSE and REMAND for further proceedings.

**I.  STATEMENT OF THE CASE**

       Plaintiff seeks judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income filed in July 2002. [Administrative Record ("AR") 13, 56] Her applications were initially denied on November 15, 2002. [AR 24, 25, 41] Upon Plaintiff's request, an Administrative Law Judge (ALJ) conducted an evidentiary hearing on March 15, 2004. [AR 13, 27, 37, 396 ] The ALJ subsequently issued a written ruling

on May 20, 2004, denying Plaintiff's applications on the basis that she was not disabled in that she retained the residual functional capacity (RFC) to perform her past relevant work (Step Four). [AR 21]  On August 25, 2004, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 6]  *See* 20 C.F.R. § 404.981.  Plaintiff timely filed her complaint with this court on October 18, 2004, in which she seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in 1951, and was 52 years on the date of the ALJ's decision. [AR 56 ] She has a high school education and her past relevant work history includes working as a sales clerk, a teacher's aide, a daycare worker and a baker.  [AR 71, 73]  Plaintiff alleged that she became disabled due to neck injury, back injury, and depression . [AR 14, 65]

Plaintiff claims that she became disabled and could not work on March 17, 2000, after  she fell down some icy steps at her apartment building.  Although she returned to her job as a baker on that day, her continued back and neck pain forced her go to the emergency room three days later. [AR 98] At that point her injuries were deemed "primarily muscular in nature" and she was diagnosed with back, neck and chest wall strain, and with a minor head injury including a possible concussion.  [AR 99]

During follow up visits with her doctor, J. Budnick, M.D., Plaintiff continued to complain of pain and headaches.  She also reported memory problems and some confusion.  [AR 158-9] Dr. Budnick continued to see Plaintiff on a regular basis through September 11, 2001, during which time he prescribed numerous medications, steroid and trigger point injections, and cervical

epidural injections and facet blocks. [AR 120-155, 164-176, 213-20]   A referral to an orthopaedic doctor during this time resulted in an opinion of no surgically amenable problem and a recommendation of a continued course of conservative therapy. [AR 209-212]   Plaintiff also had a neurological consultation in which she reported back pain, neck pain, headaches and depression. She was treated with medication and reported that it was helping on April 10, 2002. [AR 177-180]

In April of 2003, Plaintiff sought a vocational evaluation from a certified rehabilitation counselor. [AR 310]   As part of this evaluation, Plaintiff saw Dr. Timothy O. Hall who opined that Plaintiff was not at maximum medical improvement, and assigned Plaintiff a 34% impairment rating to the whole person. [AR 300 ]   Dr. Hall's recommended physical restrictions were: no shoulder work activities; no bending, stooping, or twisting at the waist more than infrequently; no lifting from floor to waist or waist to shoulder of more than 15 pounds; and frequent position changes. [AR 302]   Dr. Hall recommended a vocation change from baker, and concluded that without management of her problems, it was his opinion that she was not currently capable of "any gainful employment." [AR 303]   The vocational evaluation concluded that based on Plaintiff's physical and intellectual limitations, it did not appear she was employable "without significant vocational rehabilitation assistance." [AR 315] An update of this vocational assessment, dated August 27, 2003, opined that Plaintiff was limited to modified sedentary work that allowed her to change positions, but again concluded that Plaintiff "does not appear to be equipped to be able to reemploy without vocational rehabilitation in any position." [AR 308-09]

An occupational therapist concluded, in a functional capacity assessment dated June 12, 2003, that Plaintiff was functioning at "less than sedentary" and she exhibited no restrictions on

reaching and could frequently sit, stand and walk, and occasionally bend and kneel. [AR 329-331]  The report noted that Plaintiff's effort was borderline submaximum and that she was exaggerating her symptoms.  [AR 329, 330]  A functional capacity evaluation performed by a hand therapist on July 17, 2003, concluded that Plaintiff could perform part-time sedentary work with:  minimal walking; hourly changes in sitting and standing; and no crouching, stooping, crawling, climbing, repetitive upper extremity motion, or reaching above the shoulder level.  [AR 338-345]   Finally, a vocation/employment assessment report dated August 5, 2003, concluded that it was "more than likely" that Plaintiff retained the RFC to work in "unskilled to semi-skilled sedentary to modified lighter duty occupations."  [AR 320-28]

In September of 2003, after a lapse in care due to Plaintiff's lose of health insurance, she began treatment with Dr. Thomas Higgenbotham.  [AR 317-395, 409]   Upon initial examination, he assessed probable long standing closed head injury, depression, chronic pain and apparent discogenic disease. [AR 364]   Dr. Higgenbotham treated Plaintiff with medications, injections, and manipulation therapy through March of 2004.  [AR 317-395]   During that time, on December 30, 2003, Dr. Higgenbotham opined that Plaintiff was capable of lifting and carrying ten pounds occasionally, and five pounds or less on a frequent basis, and that she could sit or stand for thirty minute intervals for four hours of each in an eight hour workday.  She could reach for fifteen minutes at one time, for three hours in a workday, could "handle" for one hour of time, for six hours in a work day, and could "finger" for one hour of time, for six hours in a work day. She also needed several postural changes, between sitting, standing and walking, during her working day.  Dr. Higgenbotham concluded, however, that Plaintiff was not able to work a forty hour work week.  [AR 317-19]

4

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 107 S.Ct. 2287 (1987); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987); 20 C.F.R. § 404.1505.

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Step Four then requires the claimant to show that the impairment(s) and assessed RFC prevents her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Secretary has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant is entitled to benefits if the Secretary cannot establish that he can perform an alternative work activity and that this type of job exists in the national economy. The Secretary may rely upon the Medical Vocational Guidelines (the "grids") to meet this burden. *Bowen v. Yuckert, supra*, 482 U.S. at 146. *See also Heckler v. Campbell*, 461 U.S. 458, 461-462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)(the grids consist of a matrix of four factors – physical ability, age, education, and work experience – and rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy and, as such, direct a conclusion as to whether work exists that the claimant could perform).

## IV. SSA's RULING

The ALJ first determined that Plaintiff has not performed any substantial gainful activity since March 17, 2000, the alleged onset date of disability (Step One). [AR 14] The ALJ next found that "there is acceptable evidence of underlying medically determinable impairments that result in more than a minimal reduction in basic work like function to the extent that [Plaintiff] has a severe impairment under the Act." (Step Two). [AR 20] However, the ALJ further found that Plaintiff's impairments "have not, either singly or in combination with any other impairment, met or equaled any impairment found in the Listing of Impairments" which would deem them be so severe as to preclude substantial gainful employment (Step Three). [AR 20]

As a result, the ALJ went on to determine whether Plaintiff retained the RFC to perform the requirements of her past relevant work (Step 4). [AR 13] After reviewing the evidence and

the credibility of Plaintiff's subjective complaints and limitations, the ALJ found that Plaintiff retained the RFC for full range of light work. [AR 22]  Given this RFC assessment, the ALJ determined that Plaintiff was able to perform her past relevant work as a teacher's aide and sales clerk, and thus he concluded that she was not under a disability. [AR 23]  The SSA Appeals Counsel subsequently denied Plaintiff's request for review, making the ALJ's decision final. [AR 6]  This appeal followed.

## V. STANDARD OF REVIEW

This court's limited review here is whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review is "to determine whether the findings of fact of the Secretary are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  I examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met.

*Casias v. Secretary*, *supra*, 933 F.2d at 800 (*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).  With regard to the application of the law, reversal may be appropriate when the Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

### VI. ANALYSIS

<u>Opinions of Treating Physicians</u>

I first address Plaintiff's contention that the ALJ erred when he evaluated the opinions of Plaintiff's treating physicians.   Because I conclude that the ALJ's order fails to demonstrate reliance on the correct legal standard, I reverse and remand for further proceedings consistent with this order.

The treating physician rule dictates that the ALJ must give controlling weight to a treating physician's opinion which reflects a judgment about the nature and severity of the impairments and any physical or mental restrictions if it is:  1) well supported by clinical and laboratory diagnostic techniques, and; 2) if it is not inconsistent with other substantial evidence in the record. *See Goatcher v. U.S. Dep't. of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  If the treating physician's opinion is deficient in either of these respects, then it is not entitled to controlling weight.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

Even if the opinion is not entitled to controlling weight, however, it is still entitled to "deference" and, as a result, must be weighed by using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301. *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(listing the factors). After these factors are considered, the ALJ must provide good reasons for the weight he ultimately assigns the opinion. *Watkins v. Barnhart, supra,* 350 F.3d at 1300. "A treating physician's opinion may be rejected, but if it is rejected, the Secretary must give specific, legitimate reasons for his action." *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir. 1988); *see also Goatcher v. United States Dep't of Health & Human Servs., supra*, 52 F.3d at 290.

Plaintiff first contends that the ALJ's order applied the improper standard of "special significance," as opposed to affording the treating physicians' opinions "controlling weight." In his order, when assessing the medical records and opinions from Plaintiff's treating physicians, the ALJ noted that the "[r]egulations and applicable case law provide that the opinion of treating sources, . . . can be entitled to *special significance* when those opinions are consistent with the record and well supported." (emphasis added). [AR 17] However, the ALJ did not apply such a standard to the treating physician's opinions because he first determined that the individual opinions were not well supported, nor were they consistent with the medical record.

When weighing Dr. Budnick's opinion that Plaintiff was unable to work, the ALJ determined that Dr. Budnick's "clinical signs, findings and laboratory studies, along with the signs

9

and findings of numerous other examining and treating sources, are consistently unremarkable." Therefore, the ALJ concluded that Dr. Budnick's opinion "is not well supported or consistent with the records as a whole" and, as such, his opinion was "given no weight in this matter." [AR 17]

When weighing Dr. Hall's one-time rating assessment – which gave her a 34% of whole person rating and opined that she could not work regularly based on her symptoms at the time of the evaluation – the ALJ noted "the generally unremarkable objective findings in Dr. Hall's exam." The ALJ concluded that Dr. Hall's "assessment that the claimant cannot work regularly is not well supported by the clinical record, or even his own clinical examination." As a result, Dr. Hall's opinion was also "given no weight." [AR 19]

Finally, as to Dr. Higginbotham's opinion, the ALJ noted that the doctor's assessment indicated that Plaintiff "can sit, stand and walk in a light range of work and life and carry in a sedentary range. " The ALJ further noted, however, that Dr. Higginbotham "placed greater restrictions on the claimant than those alleged by the claimant herself." Nonetheless, Dr. Higgenbotham's conclusion was that claimant could "sit, stand, and walk on a regular and continuing basis in jobs with some minimal nonexertional limitations involving reaching, handling, fingering, twisting, bending, crouching, kneeling and stair climbing" and that she would need postural adjustments. At one point Dr. Higgenbotham indicated that she did not need a job that permitted her to lie down during the workday, although he later reported that it was reasonable for the claimant to lie down for an hour after taking a drug which Plaintiff had reported she was not taking regularly. Despite these determinations, Dr. Higgenbotham concluded that Plaintiff could not work. The ALJ gave no weight to Dr. Higgenbotham's ultimate opinion because it was

again inconsistent with the clinical record accumulated in this case, as well as his own clinical records, which show "minimal objective findings over time and a lack of compliance with prescribed treatment on a regular basis." [AR 20]

Because the ALJ here concluded, with substantial record support, that the treating physicians' opinions were not well supported and were inconsistent with other substantial evidence in the record, the controlling weight standard is not applicable. Instead the ALJ was required to give the opinions deference, and was required to provide specific, legitimate reasons for the weight he ultimately assigned the opinions. However, the ALJ's order lacks the analysis necessary for me to ascertain whether he afforded the treating physicians' opinions deference. The order did not set forth or discuss the six factors articulated in *Watkins v. Barnhart, supra,* when weighing the relevant opinions, nor did it acknowledge that the treating physicians' opinions were entitled to deference. As a result, the ALJ here failed to articulate in his order the legitimate and specific reasons for the ultimate decision to give no weight to the three individual opinions. Because the order fails to reveal that the ALJ applied the appropriate legal standards, reversal is appropriate. *See Goatcher v. U.S. Dept. of Health & Human Services, supra*, 52 F.3d at 290 (remanding for reconsideration of the medical evidence under the appropriate legal standard).

Step Three Determination

In light of my remand, I briefly address Plaintiff's contention that the ALJ erred in Step Three of the analysis because he failed to adequately address whether all of her impairments – particularly her impairments of borderline intellectual functioning, depression and post-concussive syndrome – standing alone or in combination with her other impairments equated an impairment

11

precluding substantial gainful employment.

In support of her argument, Plaintiff asserts that she met an impairment listing for mental retardation, in that there was evidence that her full scale I.Q. had been assessed at 59; she scored at a third grade level in reading and spelling and at a fourth grade level in arithmetic; and she testified that she could not understand all of the words in the newspaper. See 20 C.F.R. Pt. 404, Subpt. P. App 1., 12.05C (requiring "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other medical impairment imposing an additional and significant work-related limitation").  Plaintiff also refers me to evidence presented that she suffered from post-concussive symptoms and significant depression.

Plaintiff maintains that the ALJ should have requested a consultative examination to assess Plaintiff's mental impairments, because the evidence revealed a "reasonable probability" that she suffered from a severe impairment. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)(when a claimant has set forth evidence sufficient to suggest a reasonable possibility that a severe impairment exists, it "becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment"). Although in this case Plaintiff was represented at the hearing by counsel, and the record indicates that counsel did not request a consultative exam, a reasonable probability is clearly established in the record triggering the need for a consultative exam as to Plaintiff's mental impairments on remand. *Id.* at 1168.

Residual Functional Capacity (RFC) Evaluation

Finally, Plaintiff argues that the ALJ failed adequately to evaluate her RFC. She asserts that the record is devoid of any opinion indicating that she was capable of performing a full range of light work; that the ALJ's findings regarding her credibility regarding her own abilities are not supported by substantial evidence; and that the ALJ failed to make findings regarding the demands of her past relevant work in light of her assessed RFC. In light of my ruling that the ALJ's analysis regarding the weight to be given to Plaintiff's treating physician's opinions in Step Three of the analysis was inadequate, amounting to reversible error, I do not reach Plaintiff's claims of error related to the RFC determination in Step Four.

Accordingly, I REVERSE the SSA Commissioner's final order and REMAND for additional proceedings consistent with the rulings and views set forth in this order.

Dated:  October   6  , 2005 in Denver, Colorado.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, CHIEF JUDGE